OPINION
 

 Per Curiam:
 

 Appellant Emory Todd Dawes was charged as a principal to involuntary manslaughter for the death of Jennifer Gail Swett. Swett died when a truck driven by Dawes’ friend, Kevin Neil Jenkins, forced the car in which Swett was riding as a passenger off the road and into a ditch. Dawes and Jenkins were allegedly racing when the oncoming car containing Swett swerved into the ditch to avoid a head-on collision. Dawes’ charge of principal to involuntary manslaughter, stemming from this accident killing Swett, was based upon reckless driving in violation of NRS 484.377, Nevada’s “anti-racing” statute.
 
 [1]
 

 
 *1143
 
 At his trial, Dawes requested that the judge define the words “speed contest” within the meaning of the “anti-racing” statute. The judge declined, finding the words sufficiently clear. After deliberations began, the jurors inquired whether there existed a legal definition of “speed contest,” and the judge read an instruction proposed by Dawes. The jury found Dawes guilty. Dawes appeals, claiming that it was prejudicial error to fail initially to give his proposed instructions and that it was prejudicial error to give the supplemental instruction further defining and clarifying the term “speed contest” after closing argument. We conclude that it was not error to supplement or clarify the instructions, and that Dawes has failed to articulate prejudice.
 

 As stated, Dawes was charged with the crime of principal to involuntary manslaughter, a felony as defined by NRS 195.020, 200.070 and 200.090.
 
 [2]
 
 Testimony at trial showed that Dawes was racing his friend Jenkins on the Spring Valley Parkway in Elko County. Dawes was driving a grey or silver pickup truck and Jenkins was driving a black pickup truck.
 

 Paul McGee saw the two trucks speeding on the parkway
 
 *1144
 
 “bumper to bumper” and he saw them disappear in a cloud of dust. From the cloud of dust, he saw a blue Camaro turn around and pursue the trucks. Richard Traynor, an off-duty reserve officer with the Elko County Sheriff’s Office, testified that he was driving on the Spring Valley Parkway when he saw two trucks, one silver and one black, travelling alongside each other occupying the full roadway in his direction. Traynor, who was driving a blue Camaro, swerved into a ditch to avoid a collision and turned around to follow the two trucks. Traynor testified that he saw the two trucks passing each other on the parkway.
 

 Shortly thereafter, Traynor saw the black pickup truck in the ditch with a small white car. He believed the small white car, driven by Greg Molyneux, had swerved into the ditch to avoid a head-on collision with the black truck. Fifteen-year-old Swett, the passenger in Molyneux’s car, died at Elko County Hospital shortly after the accident. Finally, Carl Johnson testified that he saw two trucks speeding on the highway, one behind the other, but he did not see them pass each other.
 

 Jenkins was charged with driving under the influence resulting in the death of another person, a felony, and alternatively with reckless driving causing the death of another person, and involuntary manslaughter, both felonies.
 
 [3]
 
 Dawes was charged in the same Information charging Jenkins, but the trial judge granted Dawes’ motion to sever and Dawes was tried alone before a jury on the charge of principal to involuntary manslaughter, defined above. The state proceeded on the theory that Dawes participated in and induced Jenkins to participate in an illegal speed contest, in violation of NRS 484.377, resulting in an accident that caused Swett’s death.
 

 At trial Dawes proposed two alternative instructions defining “speed contest.” Proposed Instruction A read as follows:
 

 “Speed contest” is defined as the awareness or intent of competition in respect to speed and distance to prove superiority in performance.
 

 Proposed Instruction B read as follows:
 

 A “speed contest” is an intentional competition in respect to some phase of locomotion. The dominant characteristic of a speed contest is the awareness or intent of competition in respect to speed and distance to prove superiority in performance in some respect.
 

 The judge rejected both instructions and wrote on them that his
 
 *1145
 
 rejection was “based on [the] fact that since [the] Nevada Legislature chose not to define ‘speed contest’, [the] court finds no such necessity here. Also see
 
 State v. Turner,
 
 186 S.E.2d 681 (1972).” The judge also stated that
 

 there has to be an end to the definitional chain of things because if there’s not, you’ve got to define the words used in the definition and things never end. I’m certainly open to giving any instruction that I think would be helpful and fair. This is my feeling is that the legislature thought that the words speed contest were sufficient in and of itself [sic] and made no effort to further define it [sic]. In my own experience in life is that those words have meaning unto themselves. It [sic] is crystal clear and need no further definition. In fact, they’re very common words. “Contest” obviously means competition and so forth. I want to point out what would happen here if we gave either A or B, right now we’ve got the words “speed contest” which both the legislature and I believe are self defined and crystal clear. If I start using these definitions, then what does “superiority in performance” mean? I think “speed contest” is a lot clearer than “superiority in performance.” Is it superiority in performance of the engine, of the overall vehicle, of the driver? Things like this. In other words, to me the definitions clearly add a vagueness that do not exist in the words “speed contest” by themselves. Therefore I believe there is no further need for further definition.
 

 After deliberating a few hours, the foreman of the jury sent a note to the judge that read, “Is there a legal definition of speed contest?” The judge then instructed the jury according to Dawes’ original Proposed Instruction B.
 

 The jury found Dawes guilty of the charge of principal to involuntary manslaughter. The judge sentenced Dawes to six years in the Nevada State Prison. Dawes appeals, claiming that the judge committed prejudicial error in refusing Dawes’ initial proposed instructions and that the judge “compounded” the error by clarifying the instruction after closing arguments had been concluded. We conclude that both of Dawes’ arguments are without merit.
 

 Dawes first claims that “harm had been irreparably done” when the judge initially refused to instruct the jury as to the “legal definition” of “speed contest.” We conclude, however, that the judge did not err in failing to define “speed contest” within the meaning of the “anti-racing” statute.
 

 Trial courts have broad discretion in deciding whether terms within an instruction should be further defined.
 
 See
 
 Pena v.
 
 *1146
 
 Ludwig, 766 S.W.2d 298, 305 (Tex. Ct. App. 1989); 75B Am. Jur. 2d
 
 Trial
 
 § 1237 (1992). Words used in an instruction in their ordinary sense and which are commonly understood require no further defining instructions.
 
 See
 
 State v. Smith, 774 P.2d 811 (Ariz. 1989) (“knowingly” need not be defined); State v. Barnett, 691 P.2d 683, 685-86 (Ariz. 1984) (failure to define “intentionally” not error); 75B Am. Jur. 2d
 
 Trial
 
 § 1237 (collecting numerous cases holding that “gross and willful misconduct,” “knowingly,” “corroboration,” “deliberately” and “conspiracy” need no definition).
 

 However, when a phrase has a technical legal meaning, that phrase should be defined so that a jury is not misled or confused into applying the plain language as commonly understood.
 
 See
 
 McBride v. Woods, 238 P.2d 183, 186 (Colo. 1951) (“unavoidable accident”);
 
 see also
 
 75B Am. Jur. 2d
 
 Trial
 
 § 1237 (collecting cases holding that some terms requiring definition include “premeditation and deliberation” in first degree murder cases, “mental incapacity,” and procedural phrases).
 

 In the instant case, the district court judge implicitly determined that the words “speed contest” did not have a technical legal meaning within the “anti-racing” statute. He specifically stated, “[Tjhose words have meaning unto themselves. It [sic] is crystal clear and need no further definition. In fact, they’re very common words. ‘Contest’ obviously means competition and so forth.” We agree with the district court judge that the words “speed contest” have no technical legal meaning. It was therefore not error for him to have declined initially to define those terms.
 

 In rejecting Dawes’ proposed instructions, the judge relied on a North Carolina case which expressly held that the words “speed competition” were “perfectly clear and require[d] no further definition.”
 
 See
 
 State v. Turner, 186 S.E.2d 681, 683 (N.C. Ct. App. 1972). Dawes’ proposed instructions, which the judge ultimately gave to the jury upon the jury’s request, are taken from the leading case in this area, City of Madison v. Geier, 135 N.W.2d 761 (Wis. 1965). In
 
 Geier,
 
 the court discussed the defendant’s contention that “racing” has five elements: intent, prior agreement, competition, high speed and distance.
 
 Id.
 
 at 764. The court stated that “the first three are but shades of the same conceptual notion that a
 
 race
 
 is an intentional competition in respect to some phase of locomotion. The dominant characteristic of a
 
 race
 
 is the awareness or intent of competition in respect to speed and distance to prove superiority in performance in some respect.”
 
 Id.
 
 (emphasis added). The
 
 Geier
 
 court noted that other courts had interpreted “racing” within the meaning of “anti-racing” statutes to mean “a contest of speed or acceleration,”
 
 *1147
 
 and “a contest of speed — involving the idea of competitive locomotion — in which competition is an essential element.”
 
 See id.
 

 Thus, we conclude that
 
 Geier
 
 stands foremost for the proposition that a race within the meaning of Wisconsin’s anti-racing statute is a competition or contest of speed. Nevada’s statute does not use the word race; instead, it uses the words “speed contest” to describe the proscribed conduct. These words are sufficiently clear to describe the forbidden conduct. That is, no drivers shall engage their vehicles in a contest or competition of speed on the highway.
 

 In addition, the issue in
 
 Geier
 
 was sufficiency of the evidence, not particularity of the charge to the jury.
 
 Id.
 
 at 766. The
 
 Geier
 
 court rejected the classification of racing into discreet elements (holding the high speed and distance factors not dispositive) and upheld a racing conviction without requiring that a further definition of “racing” be read to the jury.
 

 Of all the reported appellate decisions, none has held that a lower court is required to define further the statutory terms “race,” “speed competition” or “speed contest.” Rather, in the cases that have provided definitions of all these phrases the courts have defined the terms in order to analyze whether sufficient evidence had been admitted at trial upon which the jury could have found the essential factor of competition. Thus, the courts that have examined their states’ statutes have found competition to be the essential factor in violating “anti-racing” statutes. We conclude that the word “contest” in Nevada’s statute embodies the factor of competition and that “speed contest” embodies the factor of “competition in respect to some phase of locomotion.” Accordingly, it is unnecessary to define “speed contest” in prosecutions under this statute and the lower court did not err in refusing to give the proposed instructions.
 

 Dawes next claims that reading the supplemental clarifying instruction “compounded” the claimed initial error because Dawes was forced to argue his case to the jury in closing argument without the benefit of the more complete instruction defining “speed contest.”
 

 First, we have concluded that the judge did not err when he declined initially to define “speed contest.” Second, we conclude that Dawes’ closing argument would not have been materially different or more effective with the benefit of the later instruction, and that he has therefore failed to show prejudice.
 

 We find no error in the district court judge’s rulings and therefore affirm the judgment of conviction of one count of principal to involuntary manslaughter.
 

 [1]
 

 NRS 484.377 provides, in relevant part:
 

 
 *1143
 
 Reckless driving; penalty for willful or wanton disregard for safety causing death or substantial bodily harm.
 

 1. It is unlawful for any person to:
 

 (b) Drive a vehicle in an unauthorized speed contest on a public highway. A violation of this subsection . . . constitutes reckless driving.
 

 We refer to this statute as an “anti-racing” statute because this is the common term for such a statute, although various statutes proscribe “racing,” “speed competitions” or “speed contests.”
 
 See
 
 Annotation,
 
 Validity, Construction, and Application of Criminal Statutes Specifically Directed Against Racing of Automobiles on Public Streets or Highways (Drag Racing),
 
 24 A.L.R.3d 1286, 1288-89 (1969).
 

 [2]
 

 NRS 195.020, 200.070 and 200.090, provide, in relevant part, as follows:
 

 195.020 Principals. Every person concerned in the commission of a felony . . . whether he directly commits the act constituting the offense, or aids or abets in its commission . . . and every person who, directly or indirectly . . . induces . . . another to commit a felony ... is a principal, and shall be proceeded against and punished as such.
 

 200.070 “Involuntary manslaughter” defined.
 

 1. Involuntary manslaughter is the killing of a human being, without any intent to do so, in the commission of an unlawful act, or a lawful act which probably might produce such a consequence in an unlawful manner ....
 

 200.090 Punishment for involuntary manslaughter.
 

 1. Every person convicted of involuntary manslaughter shall be punished by imprisonment in the state prison for not less than 1 year nor more than 6 years ... or by a fine of not more than $5,000, or by both fine and imprisonment.
 

 [3]
 

 Jenkins’s charges and “plea bargain” were the subjects of a separate mandamus action in this court, disposed of in Jenkins v. District Court, 109 Nev. 337, 849 P.2d 1055 (1993).