PRISCILLA FORD, Appellant, *v.* WARDEN, Nevada Women's Correctional Center, Respondent.

No. 24961

July 27, 1995 901 P.2d 123

---

[5]The Honorable Robert E. Rose, Justice, voluntarily recused himself from participation in the decision of this appeal.

[Rehearing denied October 19, 1995]

*Michael Pescetta,* Nevada Appellate and Postconviction Project, Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Gregory R. Shannon,* Deputy District Attorney, Washoe County, for Respondent.

# OPINION

*Per Curiam:*

Petitioner Priscilla Ford was convicted of six counts of murder and twenty-three counts of attempted murder after driving an automobile onto a sidewalk in downtown Reno on Thanksgiving Day in 1980. *See* Ford v. State, 102 Nev. 126, 717 P.2d 27 (1986). She was sentenced to death. This is another in a series of appeals by Ford to this court for relief.[1] On appeal, Ford asserts

---

[1]Ford initially sought writ relief in the form of prohibition or mandamus concerning a forced regimen of psychotropic medication. Ford v. District Court, 97 Nev. 578, 635 P.2d 578 (1981). We concluded that since Ford was determined to be competent to stand trial, she should not be forced to take psychotropic medication. *Id.* at 579, 635 P.2d at 579. On direct appeal from Ford's judgment of conviction and sentence of death, we affirmed. Specifically, we ruled that (1) the district court did not abuse its discretion in denying a motion for a change of venue; (2) the district court did not err in denying Ford's challenges for cause or in denying Ford's request for additional peremptory challenges; (3) the district court did not abuse its discretion in not ordering the psychiatric examination of Ford during trial; (4) the trial court did not err in submitting the issue of Ford's competency to the jury; (5) there was substantial evidence in the record to support the jury's findings, the two aggravating circumstances and the sentence of death; and (6) Ford's death sentence was not excessive or disproportionate. Ford v. State, 102 Nev. 126, 717 P.2d 27 (1986). Finally, on Ford's appeal following a denial of post-conviction relief under NRS 177, we concluded that neither trial nor appellate counsel were ineffective. Ford v. State, 105 Nev. 850, 784

the following claims: (1) that the district court erred in failing to hold a hearing or failing to issue a finding of fact as to Ford's competency prior to dismissing her petition; (2) that the district court erred in not obtaining the entire record in order to determine whether her claims had merit (the voluminous trial record is presently with the federal district court); (3) that the district court erred in refusing to appoint an attorney for Ford; (4) that the district court erred in not reaching the merits of the case, but rather dismissing the case based on procedural default rules; and (5) that the district court erred in determining that the case of Dawson v. Delaware, 503 U.S. 159 (1992), was inapplicable to the case at hand. Ford also requests this court to reduce her sentence from death to life in prison without the possibility of parole.

## PROCEDURAL BACKGROUND

On November 12, 1991, Ford filed a petition for a writ of habeas corpus in the First Judicial District Court. Her basic grounds for relief may be summarized as follows: (1) that she was deprived of a fair trial; (2) that her state and federal constitutional rights were abridged by the ineffective assistance of trial and appellate counsel; and (3) that both the state and the court system engaged in unconstitutional conduct.

Ford contends that she was denied effective assistance of counsel by reason of counsel's failure to: (1) seek severance of the counts; (2) voir dire prospective jurors concerning their attitudes about the insanity defense; (3) suppress the seizure and use of Ford's personal writings and books; (4) suppress the introduction of prior bad acts; (5) seek court rulings regarding the prosecution's examination of Ford's expert witnesses; (6) challenge Ford's competence to stand trial; (7) request a jury instruction on mitigation; (8) seek a judicial determination of Ford's competence to proceed *pro se* and testify in her own defense; (9) effectively handle Ford's direct examination; and (10) object to a jury instruction relating to aggravating circumstances.

Ford also claimed that she was denied effective assistance of counsel on direct appeal because appellate counsel failed to brief the following issues that were properly preserved for review: (1) [erroneous, rejected] jury instructions at the guilt and penalty phases; (2) the biased read-back of testimony; (3) the allegedly biased juror; (4) the administration of psychotropic drugs; (5) statements that were involuntary and coerced; (6) the denial of

P.2d 951 (1989). Ford recently sought federal post-conviction relief in the United States District Court, and that matter has been stayed pending the resolution of the issues now before this court.

Ford's right of confrontation; (7) the introduction of irrelevant and prejudicial acts; (8) prosecutorial misconduct; (9) the bifurcation of sanity determination from other trial issues; (10) the injection of racial prejudice by the prosecution; and (11) prejudicial and inflammatory comments and statements of personal belief by the prosecutor.

Ford maintained that she was prevented from previously presenting these claims due to the unconstitutional conduct of the State of Nevada, its judges, justices, and agencies, which, in a "rush to justice," deprived Ford of her rights to a fair trial, due process, equal protection, and freedom from cruel and unusual punishment. Ford's petition supplied two reasons why she had good cause for not having addressed the foregoing issues in her initial petition for a writ of habeas corpus. First, she claimed that the district court did not allow sufficient time for petitioner's counsel and an expert attorney to read and adequately examine the entire record. Her petition asserted that she was subjected to an unreasonable rush to justice. Ergo, several glaring errors were not recognized and raised. Second, Ford insists that she was incapable of assisting in the isolation and development of the legal issues.

On December 19, 1991, the district court ordered the State to file a response to Ford's petition. In response, the State filed a motion to dismiss. The State maintained that Ford's claims of ineffective trial counsel had been litigated and rejected previously by this court in *Ford,* 105 Nev. 850, 784 P.2d 951 (1989). Conceding that certain claims presented by the petition were slightly distinct from previous claims, the State referred to the following comments by this court concerning the issue of ineffective counsel: (1) "[t]here is nothing in the record to show that [trial counsel] failed to give Ford reasonable assistance," *Ford,* 105 Nev. at 853, 784 P.2d at 953; and (2) in ruling that Ford's contention that her "appellate counsel failed to raise all meritorious issues is without merit," we noted that "Ford's counsel stated that she did not disregard any crucial issue in Ford's appeal . . . [and] that appellate counsel is most effective when she does not raise every conceivable issue on appeal." Finally, we also noted that we reviewed the record and "conclude[d] that Ford's counsel adequately raised the relevant issues on appeal." *Id.* (Citations omitted.)

In addition, the State identified issues raised by Ford which this court had already addressed, including failure to raise the issue of a biased sitting juror, extra peremptory challenges, and administration of psychotropic drugs. *Ford,* 102 Nev. at 131-34, 717 P.2d at 29-32. The State also insisted that Ford's claims against Nevada's judges, justices, and agencies merely repeated the

claims of ineffective trial and appellate counsel. Consequently, the State concluded that the issues raised in Ford's petition were either not new or were waived, thus requiring dismissal. *See* NRS 34.810.

In Ford's response to the State's motion to dismiss, she explained the necessity for exhausting her state remedies in preparation for seeking relief in federal court. She noted that her initial petition for habeas corpus inadequately addressed issues of ineffective assistance of counsel, as the subject was only generally addressed (inexperience and time constraints of trial counsel), except for references to counsel's failure to have her car inspected and to interview State witnesses. *See Ford,* 105 Nev. at 852-53, 784 P.2d at 952-53. Ford argued that this court's general language, asserting that trial and appellate counsel had been effective, could not be used to bar all issues that could potentially be raised.

Ford insisted that this court could not, on its own, review the entire record and ascertain whether her attorneys were effective. She also complained that we failed to discuss the issues presented in her petition, specifically, whether she was sufficiently competent to disregard her attorney's advice and testify at trial,[2] and whether she was subjected to unreasonable time restrictions.

Ford rejected the State's waiver argument on grounds that because of her incompetence, she was incapable of "knowingly and understandingly" waiving her right to post-conviction relief. *See* Rogers v. Warden, 86 Nev. 359, 361, 469 P.2d 993, 994 (1970). As an alternative basis for relief, Ford reinvoked her arguments demonstrating good cause for not having raised the issues in her prior petition.

In addition to her answer, Ford filed a motion requesting authorization, at state expense, to copy the entire record and renumber the volumes. She contended that the expense was justified because the record, as it stood, was too complex and time consuming to review. On appeal, Ford submits that her request was, in effect, an effort to provide the court with a reasonably reviewable record.

In response, the State asserted that Ford's answer to its motion to dismiss merely repeated issues already raised and addressed. The State also claimed that Ford failed to demonstrate cause and prejudice. The State contended that Ford's ineffective counsel and

---

[2]Ford disagreed with the State's assertion that this court found Ford to be competent during trial, stressing that it was never properly decided whether Ford, resisting the advice of her attorney, was competent to represent herself. Ford notes that this court found her competent due to the psychotropic drugs, but that after she prevailed in requesting the cessation of drug therapy, her competency was never addressed.

rush to justice arguments had previously been rejected on direct appeal and in post-conviction relief proceedings.

On April 20, 1992, Ford filed a statement of supplemental authority, asserting that the case of Dawson v. Delaware, 503 U.S. 159 (1992), supported her claim that her trial counsel unreasonably failed to seek pretrial suppression of Ford's writings and autobiographical material, the admission of which assertedly violated the First and Fourteenth Amendments to the U.S. Constitution and related Nevada constitutional provisions. On June 11, 1992, Ford's counsel, Annette R. Quintana, having decided to close her practice, sought judicial appointment of counsel for Ford.

On September 3, 1993, the district court entered an order dismissing Ford's petition and denying Ford's motion to copy the record and to appoint new counsel. The district court reasoned that Ford's claims of ineffective assistance of trial and appellate counsel and the unconstitutional conduct of the State of Nevada had been previously raised and rejected in her direct appeal to this court. The district court also noted that the issues of competency and the administration of psychotropic medication had also been decided in *Ford*, 97 Nev. 578, 635 P.2d 578 (1981), and in *Ford*, 102 Nev. 126, 717 P.2d 27 (1986). Consequently, the district court ruled that issues not raised in the prior post-conviction petition were deemed waived, that there was no "good cause" for raising new issues, and that there was no prejudice to Ford.

The district court's ruling also discussed the *Dawson* case, reasoning that *Dawson* was limited to its facts and did not apply to Ford's case. The district court distinguished *Dawson* on the basis that Ford's abstract views were elicited from Ford herself, as opposed to an independent source, and were presented in the guilt phase, as opposed to the sentencing phase. *See Dawson*, 503 U.S. 159 (1992).

For the aforementioned reasons, the district court dismissed Ford's petition. Ford appealed.

## DISCUSSION

NRS 34.810 governs successive petitions for writs of habeas corpus. In part, it provides:

> 2. A second or successive petition must be dismissed if the judge or justice determines that it fails to allege new or different grounds for relief and that the prior determination was on the merits or, if new and different grounds are alleged, the judge or justice finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

3. Pursuant to subsections 1 and 2, the petitioner has the burden of pleading and proving specific facts that demonstrate:

(a) Good cause for the petitioner's failure to present the claim or for presenting the claim again; and

(b) Actual prejudice to the petitioner.

Commenting on this statute, this court, in Phelps v. Director, Prisons, 104 Nev. 656, 764 P.2d 1303 (1988), stated:

Once [the affirmative defenses of waiver or abuse of the writ are] made by the state, the burden then falls upon the petitioner to show: (1) that good cause exists for his failure to raise any grounds in an earlier petition and that he will suffer actual prejudice if the grounds are not considered; or (2) if no new grounds for relief are asserted, that the previous petition was not decided on its merits. Should petitioner fail to meet this burden, the district court may then dismiss the petition without further proceedings.

*Id.* at 659, 764 P.2d at 1305 (citations omitted). We have also held that "[t]o establish good cause to excuse a procedural default, a defendant must demonstrate that some impediment external to the defense prevented him from complying with the procedural rule that has been violated." Lozada v. State, 110 Nev. 349, 353, 871 P.2d 944, 946 (1994).

Ford claims that the district court's interpretation of this court's broad language in *Ford,* barring on the merits every possible issue arising from the case, whether or not considered by this court, leaves her without any corrective options, violates her rights to due process and equal protection, and otherwise destroys her counsel's ability to secure her constitutional rights.

Ford also contends that there is no evidence that she ever knowingly and understandingly waived claims for relief, and that a knowing and understanding waiver of claims is an implied requisite of good cause. Therefore, because the State failed to demonstrate such a waiver, Ford concludes that she is relieved of her burden to demonstrate good cause. Ford also argues that courts have an obligation to review habeas corpus petitions on the merits, thereby diminishing, if not eliminating, the use and effect of procedural bars such as cause and prejudice by district and appellate courts. Alternatively, Ford urges the proposition that judicial interference with her counsel's efforts to adequately prepare her initial petition for habeas corpus is sufficient cause.

We conclude that the district court did not err in finding that Ford's claims were either previously adjudicated or waived. Contrary to Ford's position, the State does not have the burden to

prove that a petitioner knowingly and understandingly waives grounds for relief as a prerequisite to the petitioner's burden to show good cause. Neither current legislation (NRS 34.810) nor past legislation (NRS 177.385) requires such a burden of the State. NRS 177.385, which was repealed January 1, 1993, referred to a knowing and understanding waiver of claims, but such a waiver was assumed if the petitioner did not demonstrate good cause justifying his or her failure to raise asserted grounds in a prior petition. *See* Rogers v. Warden, 86 Nev. 359, 363, 468 P.2d 993, 995 (quoting Commonwealth v. Black, 249 A.2d 561, 562 (Pa. 1969)).[3] This reasoning is consistent with NRS 34.810, which justly places on petitioners the burden to show good cause and prejudice in order to avoid the effects of an abuse of the writ. For these reasons, we reject Ford's attempt to negate or circumvent Nevada's statutory requirements.

In our review for good cause and prejudice, we discovered that none of Ford's pleadings or appellate briefs has reflected specific facts demonstrating that Ford would suffer actual prejudice. Regarding good cause, Ford argues that judicially-imposed time restrictions stymied her counsel's efforts to prepare, brief, and present her case both at trial and on appeal. As previously noted, Ford also argues as good cause that she was unable to assist in her defense because of her state of mind.

We conclude that Ford's reasons do not adequately demonstrate good cause for failing to raise her present issues in a prior petition. In Ford's previous appeal from the district court's denial of her petition for post-conviction relief, Ford argued in her opening brief as follows:

> [p]ost-conviction counsel would only submit that the limitations imposed by the Court [instructing the expert attorney to review only pertinent parts of the record] were again born out of the unreasonable urge to rush the matter through the judicial system despite the need for extended time frames due to the length of the record and complexity of the issues.

Ford contended that meaningful review of the record was precluded because of the district court's unreasonable limitations on the expert attorney. Ford urged this court to remand the matter to the district court for an unrestricted review of the record to document instances of ineffective counsel. This court, in *Ford,* 105 Nev. 854, 784 P.2d 951 (1989), responded as follows:

---

[3]*Rogers* relied on former NRS 177.385, which was significantly amended in 1973 and repealed January 1, 1993. *See* 1991 Nev. Stat., ch. 44, § 31 at 92.

> Ford claims that the post-conviction court unreasonably limited the use of an attorney hired to serve as an expert witness because it did not give him all volumes of the record on appeal. This argument is without merit. A review of the record shows that the expert witness was supplied with all pertinent parts of the record. We are satisfied that the expert witness had an adequate record to work with.
>
> We conclude that Ford's remaining contentions lack merit and that the district court correctly rejected them.

*Id.* at 854, 784 P.2d at 953. We are not persuaded that our prior ruling was in error. Ford has failed to demonstrate any valid reason why we should now more fully consider the claim of an unreasonable rush to justice by the court system. Despite her allegations, she has presented no specific evidence that the time restrictions imposed were unreasonable. Notably, Ford had access to an appointed attorney and an expert witness who was given relevant portions of the record. No showing has been made that these attorneys were ineffective or that the grounds now complained of were not ascertainable from the records they reviewed. We therefore again reject Ford's argument that the judicial system has rushed her case to justice.

Ford's second justification for good cause—her inability to assist in her defense—was similarly lacking in specific evidence indicating Ford's inability to assist in her defense due to her mental state at the time of her petition for post-conviction relief. The burden of proving these impairments as support for good cause is on the petitioner. We conclude that Ford has failed to meet her burden. Furthermore, we note that the grounds that Ford asserts in her petition are legal in nature and were, more likely than not, gathered from reading the trial proceedings and the appellate record. They are not closely related to facts that required the assistance of Ford. Thus, Ford has failed to demonstrate how her inability to assist in her defense is related to her failure to assert the grounds raised in this successive petition. For these reasons, we conclude that Ford failed to meet her burden to show good cause and prejudice and that the district court properly dismissed Ford's petition without further proceedings. *See Phelps,* 104 Nev. at 659, 764 P.2d at 1305.

*Absence of a Complete Record*

Ford contends that because the district court did not have access to the full record, her case must be remanded to the district court for a thorough and valid evaluation of her claims

based upon the complete record. Ford notes that the United States Supreme Court has emphasized the importance of assuring that capital sentences are reviewed on a complete record. *Dobbs v. Zant,* 506 U.S. 357, 358, 113 S. Ct. 835, 836 (1993); *see Richmond v. Ricketts,* 774 F.2d 957, 961 (9th Cir. 1985) (quoting *Turner v. Chavez,* 586 F.2d 111, 112 (9th Cir. 1978) ("'The very nature of the habeas corpus action demands an independent review [of the record]'")). Ford insists that the district court's decision, which was based on cause and prejudice, procedural bars, and a comparison of the merits of her case with the *Dawson* case, required reference to the record. She asserts that the district court's actions violated the Eighth and Fourteenth Amendments to the United States Constitution and similar provisions in the Nevada Constitution. Ford claims that her motion to have the State underwrite the expense of producing renumbered volumes of the entire record constituted a reasonable attempt to present the record before the district court. We disagree.

The burden of production lies with the petitioner in petitions for writ of habeas corpus. NRS 34.370(4) provides in part: "Affidavits, records or other evidence supporting the allegations in the petition must be attached unless the petition recites the cause for failure to attach these materials." Contrary to Ford's assertions, her motion to have the State cover the expense of copying the record was nothing more than a motion to copy the record; it cannot be construed as a request to retrieve and transport the existing record from Las Vegas to Carson City. In addition, we conclude, for the reasons stated above, that the petition failed on its face; therefore, it was not necessary to review the entire record prior to dismissing Ford's petition. Unlike initial petitions which certainly require a careful review of the record, successive petitions may be dismissed based solely on the face of the petition. *See* NRS 34.810; *Phelps,* 104 Nev. at 659, 764 P.2d at 1305.

*Competency Hearing*

Ford maintains that the district court, or the State, had an obligation to inquire about her competence. *See* Griffin v. Lockhart, 935 F.2d 926, 929 (8th Cir. 1991). Ford underscores her documented vacillation between competency and incompetency throughout these proceedings,[4] arguing that this evidence was

---

[4]Ford's counsel also attached to the appellate brief a personal affidavit which expressed his opinion that Ford is not capable of rationally assisting him with these proceedings. NRS 178.400(2) provides:

"incompetenc[y]" means that the person is not of sufficient mentality to be able to understand the nature of the criminal charges against him,

sufficient to invoke the court's obligation to establish, through a hearing or finding, her competence to proceed.

We conclude that the district court did not err in not holding a hearing to determine whether Ford was competent to proceed. "Due process requires that a hearing be held whenever evidence raises a sufficient doubt about the mental competency of an accused to stand trial." *Id.* Ford's petition never addressed the issue of her competency except to state, as a reason for not raising the asserted post-conviction issues previously, that Ford was incapable of contributing to the isolation and development of legal issues. Likewise, no evidence was presented to the district court to raise a sufficient doubt as to Ford's competency to proceed. We therefore conclude that the district court did not err in failing to provide a competency hearing *sua sponte. See id.* at 930; *see also* Hillis v. State, 103 Nev. 531, 533, 746 P.2d 1092, 1093 (1987) (a defense not raised below will be deemed waived and will not be considered on appeal).

### Denial of Motion to Appoint Counsel

NRS 34.750(1) provides:

> A petition may allege that the petitioner is unable to pay the costs of the proceedings or to employ counsel. If the court is satisfied that the allegation of indigence is true and *the petition is not dismissed summarily,* the court may appoint counsel to represent the petitioner. In making its determination, the court may consider whether:
> (a) The issues presented are difficult;
> (b) The petitioner is unable to comprehend the proceedings; or
> (c) Counsel is necessary to proceed with discovery.

(Emphasis added.)

Although Ford's case certainly implicates elements cited in the latter half of NRS 34.750(1), we conclude, for the reasons stated above, that the district court's summary dismissal of Ford's petition was proper. Consequently, the district court did not err in dismissing Ford's petition without appointing counsel. *See* NRS 34.750(1).

### Dawson Claim

Recently, in Dawson v. Delaware, 503 U.S. 159 (1992), the

---

and because of that insufficiency, is not able to aid and assist his counsel in the defense interposed upon the trial or against the pronouncement of the judgment thereafter.

United States Supreme Court held that evidence of a defendant's abstract beliefs, if irrelevant to the proceedings, could not be introduced at the sentencing proceeding. *Id.* at 165-67. In *Dawson,* a stipulated statement was admitted during the sentencing phase indicating that Dawson was a member of a prison gang known as the Aryan Brotherhood. *Id.* The short statement did not discuss why his gang membership was relevant to his crime or sentence. *Id.* The Supreme Court held that although relevant evidence as to a defendant's beliefs could be admitted, the statement at issue was irrelevant and was erroneously admitted by the trial court at the sentencing hearing. *Id.*

Prefatorily, Ford contends that without an adequate record, the district court could not have properly compared *Dawson*'s analysis to the circumstances which occurred at her trial. As to the merits of the district court's decision, Ford argues that the stage of trial at which the evidence was admitted is not an important distinction. Ford alleges that the jury was instructed during the penalty phase that it could consider all evidence presented at the guilt phase. Ford argues that her controversial opinions were irrelevant to her sentencing and that the jury, under *Dawson,* could not constitutionally consider such opinions in determining her sentence.

In addition, Ford argues that an issue remains as to whether her trial counsel was ineffective in eliciting abstract views from her and in failing to object to their consideration in the penalty phase. Finally, Ford claims that the trial court's refusal to exclude her beliefs from the trial phase, despite her counsel's objections, was error, considering the irrelevancy of the beliefs and the highly inflammatory nature of the subjects.

Initially, we note that in this petition for writ of habeas corpus, Ford never presented to the district court the issue of whether the jury improperly considered Ford's beliefs in determining her sentence. Ford mentioned *Dawson* in a supplemental statement to support her petition's claim that her trial counsel unreasonably failed to seek a pretrial suppression of materials and writings containing Ford's beliefs. *Dawson* has little relevance to this claim, and the district court did not err in determining without the record that *Dawson* was distinguishable from the instant case. Only on appeal to this court does Ford present the theory that the jury may have erroneously considered these materials in the penalty phase of her trial. Ford cannot change her theory underlying an assignment of error on appeal. McCall v. State, 97 Nev. 514, 516, 634 P.2d 1210, 1212 (1981).

Even if we were to consider the merits of Ford's position on the unwarranted assumption that she demonstrated good cause for

not raising this issue previously, we would conclude that the admitted material to which Ford objects was not totally irrelevant to the proceedings, and that consequently, *Dawson* is distinguishable from the instant case. Ford's petition notes:

> A small portion of this material [Ford's books and writings] was relevant to the defense of insanity as demonstrating loose association of thought which is a symptom of schizophrenia. By far the bulk of Petitioner's writings had no relevance to the charges or the defense and were private musings, never intended for publication, expressing unpopular attitudes on highly controversial topics.

It also states:

> Trial counsel unreasonably examined Petitioner and elicited from her a virtual autobiography of her travels and travail from the time of her first employment to the date of the Thanksgiving Day event. This prejudiced Petitioner by "opening the door" to extensive cross-examination by Prosecutor Dunlap in which he:
>
> (i) examined Petitioner on virtually all her major writings, her collection of books and her attitudes to Jews, Mormons, Hitler, American Indians, use of marijuana, sadomasochism, witchcraft and the occult, and established religion . . . .

The foregoing material from Ford's petition indicates that Ford's beliefs and attitudes were properly admitted during the guilt phase as a result of defense counsel "opening the door." The effort by defense counsel to delve into Ford's past was an apparent tactical decision to prove Ford's only valid defense, that of insanity. *See Ford,* 102 Nev. at 130, 134-35, 138 n.8, 717 P.2d at 30, 32-33, 34-35 (discussing Ford's defense, her testimony and her turbulent life). "Tactical decisions are virtually unchallengeable absent extraordinary circumstances." *Ford,* 105 Nev. at 853, 784 P.2d at 953 (citing Strickland v. Washington, 466 U.S. 668, 691 (1984)). These extraordinary circumstances have not been shown. The excerpts above also indicate that at least certain of Ford's beliefs were relevant in providing insight as to why Ford sought to kill so many people who were unknown to her.

The issue presented on appeal is whether the alleged jury instruction given during the penalty phase permitting the jury to consider evidence presented during the guilt phase so tainted the sentencing as to require reversal based on *Dawson.* We perceive no reasonable grounds to support such a conclusion.

The *Dawson* Court stated:

> We think that it [the First Amendment] similarly prevents Delaware here from employing evidence of a defendant's abstract beliefs at a sentencing hearing *when those beliefs have no bearing on the issue being tried.*

*Dawson,* 503 U.S. at 168 (emphasis added). The *Dawson* Court precluded evidence of Dawson's membership in the Aryan Brotherhood only because the evidence was *"totally without relevance to Dawson's sentencing proceeding." Id.* at 165 (emphasis added). The *Dawson* Court noted:

> We have previously upheld the consideration, in a capital sentencing proceeding, of evidence of racial intolerance and subversive advocacy where such evidence was relevant to the issues involved. In Barclay v. Florida, 463 U.S. 939, 103 S. Ct. 3418, 77 L. Ed. 2d 1134 (1983), for example, we held that a sentencing judge in a capital case might properly take into consideration "the elements of racial hatred" in Barclay's crime as well as "Barclay's desire to start a race war." *See id.* at 949, 103 S. Ct., at 3424 (plurality opinion); *id.,* at 970, and n.18, 103 S. Ct. at 3435, and n.18 (Stevens, J., concurring in judgment).

*Id.* at 164. Similarly, in the instant case, declarations and admissions by Ford at the time of the Thanksgiving Day tragedy indicate elements of racial hatred. *See Ford,* 102 Nev. at 130-31 n.4, 717 P.2d at 30. Unlike the facts in *Dawson,* evidence of Ford's intolerances were not totally irrelevant to the sentencing proceedings. We therefore conclude that the district court did not err in distinguishing *Dawson* based solely on the evidence in the record before it.

*Modifying Ford's Sentence.*

Finally, Ford requests this court to revisit its power to evaluate the evidence in her case and, in light of her mental fluctuations between competency and incompetency, modify Ford's sentence to one of life imprisonment without possibility of parole. Ford notes this court's remark that a "just" and "better course" would have been to secure "the defendant's permanent sequestration." *Ford,* 102 Nev. at 138 n.8, 717 P.2d at 34-35. Ford refers to this court's recognition that the State will continually incur the expenses associated with finding "the point at which Mrs. Ford will be competent to receive her decreed punishment." Moreover, Ford asserts that "[t]his process will continue as long as the death sentence in this case exists."

We acknowledge our recognition that this case was not

"among the brightest stars in the judicial firmament." *Id.* We nevertheless concluded, as we do now, "that defendant's sentence of death is not excessive or disproportionate to the penalty imposed in similar cases in this State, considering both the crime and the defendant . . . [and that] it is not for this Court to diminish her punishment because of a conflict in the evidence regarding defendant's mental deficiencies." *Id.* at 137, 717 P.2d at 34-35 (footnote omitted). We perceive no basis for reconsidering our previous holding. Therefore, we deny Ford's request for a reduction in her imposed sentence.[5]

We have considered all other arguments raised in the parties' briefs and during oral argument, and conclude that they are without merit.[6]

## CONCLUSION

For the reasons discussed above, we affirm the district court's dismissal of Ford's petition for a writ of habeas corpus.[7]

---

[5]We note, parenthetically, that this case does not present, in the least degree, a factual question of guilt or innocence. The fact that Ford was the perpetrator of the crimes for which she was convicted was demonstrated beyond all doubt. It is thus seen that all of Ford's attempts to elude her decreed punishment are based on factors other than the possibility that another committed the crimes for which she was sentenced. The fact that this court may see her crimes, however heinous, in a light that does not fit traditional notions of death-worthiness affords no legitimate basis for disturbing the punishment fixed by a jury of her peers.

[6]On October 3, 1994, Ford filed a motion with this court for leave to file supplemental authorities that accompanied the motion. The State has filed its opposition. We grant her motion and instruct the clerk of this court to file Ford's supplemental authorities. We have reviewed these authorities in resolving the instant appeal.

[7]The Honorable Charles E. Springer, Justice, voluntarily recused himself from participation in the decision of this appeal.