**134 Nev., Advance Opinion 90**

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| BRANDON STARR,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 71401-COA<br><br>**FILED**<br><br>NOV 21 2018<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction, pursuant to a jury verdict, of 12 counts of burglary while in possession of a deadly weapon, 13 counts of conspiracy to commit robbery, 39 counts of robbery with use of a deadly weapon, 3 counts of attempted robbery with use of a deadly weapon, 2 counts of second-degree kidnapping with use of a deadly weapon, and 5 counts of false imprisonment with use of a deadly weapon. Eighth Judicial District Court, Clark County; William D. Kephart, Judge.

*Affirmed.*

Terrence M. Jackson, Las Vegas,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Charles W. Thoman, Deputy District Attorney, Clark County,
for Respondent.

---

BEFORE SILVER, C.J., TAO and GIBBONS, JJ.

*OPINION*

By the Court, TAO, J.:

Nevada district courts routinely instruct juries that they may consider the defendant's flight from the scene of a crime in deciding his or her guilt. *See, e.g., Weber v. State*, 121 Nev. 554, 581-82, 119 P.3d 107, 126 (2005), *overruled on other grounds by Farmer v. State*, 133 Nev. ___, 405 P.3d 114 (2017). Appellant Brandon Starr contends that the district court should have given the exact inverse of that standard instruction. Tried on multiple charges stemming from a spree of armed robberies and burglaries throughout the Las Vegas Valley, Starr argued before the district court that it should instruct the jury that it may consider his *lack* of flight from the scene of the crime in considering whether he is guilty or not guilty. We conclude the district court did not abuse its discretion in declining to give the so-called "inverse flight" jury instruction, and because we conclude that Starr's other arguments for reversal lack merit, we affirm his conviction.

## FACTS AND PROCEDURAL HISTORY

Starr and two accomplices, Tony Hobson and Donte Johns, were implicated in a series of 14 separate robberies or attempted robberies, primarily of fast-food restaurants, that the police dubbed the "windbreaker series," based on witness reports that one of the perpetrators wore a black windbreaker and a surgical mask during the crimes. The robberies were solved late one night when a police detective on routine patrol noticed a vehicle of the same color, make, and model that witnesses had described as the getaway car in the windbreaker series pull into the parking lot of a Taco Bell restaurant. The detective followed the car into the parking lot and watched it surreptitiously from a nearby parking space. After a few moments, he saw a man emerge from the car wearing a black windbreaker

COURT OF APPEALS
OF
NEVADA

(O) 1947B

and a surgical mask. The detective immediately called for backup and officers arrested the three occupants of the car, who turned out to be Starr, Johns, and Hobson, without incident or resistance.

Starr and Hobson were jointly charged with 82 felony counts—including burglary while in possession of a deadly weapon, robbery with use of a deadly weapon, and various conspiracy and attempt offenses—stemming from the 14 incidents. Johns was also jointly charged with 45 of the counts for his role as the getaway driver. Starr moved to sever his trial from codefendants Hobson and Johns, arguing that Johns had made statements to police implicating Starr and Hobson and that use of those statements by the State would violate his Sixth Amendment confrontation right. The district court denied the motion. Johns pleaded guilty to a reduced set of charges in return for agreeing to testify against Starr and Hobson.

During the 13-day trial, the jury heard testimony from numerous victims as well as from Johns, who testified at length about his role as the getaway driver in several of the robberies. Police detectives testified that they believed all of the robberies were committed by the same perpetrators based upon numerous similarities between the crimes—including the time of day, the types of businesses targeted, and the perpetrators' clothing and mannerisms during the crimes—and because surveillance camera images from different robberies showed men who appeared very similar to each other.

After the close of the evidence, Starr and Hobson submitted a joint list of proposed jury instructions to the district court, including a proposed "inverse flight" instruction, which read as follows:

 

> The fact that the defendants did not (flee, leave the scene, leave the area) does not in itself prove that the defendant is not guilty, but is a fact that may be considered by you in light of all other proved facts in deciding the question of whether the defendant is guilty or not guilty.

The district court deemed the instruction not appropriate and refused to give it. The jury ultimately found Starr guilty on 74 counts, and the court sentenced him to 37 to 152 years in prison, running counts stemming from the same incident concurrently with each other, but counts from each separate incident consecutively. Starr now appeals.

## ANALYSIS

On appeal, Starr argues that the district court abused its discretion when it refused to give his proposed "inverse flight" jury instruction.[1] Below, he argued to the district court that the instruction was justified by his having remained at the scene of the crime when police officers first arrived. On appeal, he advances a slightly different argument, contending instead that the instruction arose from his having remained within the jurisdiction of Nevada throughout the crime spree and, after being arrested, during the course of the criminal proceedings. While we note that an appellant generally may not change his or her theory

---

[1]Starr raises other arguments on appeal that can be summarily disposed of. He argues that (1) the district court erred by failing to sever his trial from his codefendants, (2) he was denied his constitutional right to a jury venire selected from a fair cross section of the community, (3) a police detective provided an improper in-court identification of Starr, (4) the evidence presented at trial was insufficient to support his conviction, (5) his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment, and (6) cumulative error warrants reversal. After careful consideration, we find no merit in these arguments.

underlying an assignment of error on appeal, *see Ford v. Warden*, 111 Nev. 872, 884, 901 P.2d 123, 130 (1995), the precise nature of Starr's argument ultimately makes little difference because the same legal analysis applies to both.

District courts possess broad discretion to settle jury instructions, and on appeal this court reviews the district court's decision for an abuse of discretion or for judicial error. *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). A defendant is entitled "to have the jury instructed on [his or her] theory of the case as disclosed by the evidence." *Nay v. State*, 123 Nev. 326, 330, 167 P.3d 430, 433 (2007) (internal quotation marks omitted). However, the instruction cannot be worded such that it is misleading, states the law inaccurately, or duplicates other instructions. *See Carter v. State*, 121 Nev. 759, 765, 121 P.3d 592, 596 (2005); *Crawford*, 121 Nev. at 754, 121 P.3d at 589.

In criminal cases, district courts may instruct juries that they can consider the flight of a defendant after the commission of a crime as evidence of the defendant's guilty state of mind. *Weber*, 121 Nev. at 581-82, 119 P.3d at 126. Generally speaking, these so-called "flight instructions" are permitted (but not required) because they reflect our common-sense intuitions about how people usually behave: most innocent people are unlikely to flee from the police for no reason at all. Remaining in place in the face of police confrontation generally "constitute[s] mere compliance with a lawful police request," and "it is reasonable to expect that all persons, whether guilty or innocent, will cooperate with a lawful police request." *People v. Williams*, 64 Cal. Rptr. 2d 203, 205 (Ct. App. 1997) (affirming trial court's decision not to give inverse flight jury instruction). Indeed, in certain situations, fleeing the scene of a crime immediately after its

commission can constitute the independent crimes of obstructing or evading police officers. *See* NRS 199.280 (prohibiting the obstruction of a public officer discharging a legal duty of his or her office); NRS 484B.550(1) (prohibiting the driver of a motor vehicle from fleeing a police officer when signaled to stop). Similarly, if a defendant remains at a crime scene but later flees the jurisdiction after being arrested and after criminal charges have been filed, he may also be subject to the court's contempt powers, forfeiture of bail (if any has been posted), and arrest pursuant to a fugitive warrant. *See* NRS 199.340(4); *see also* NRS 178.508(1)-(2); NRS 179.177-.235. In either situation, juries are permitted to rationally infer that people wholly innocent of any crime are unlikely to flee unless motivated by some measure of consciousness of guilt.

Starr argues that the inverse is also true. He contends that if the jury can be instructed that fleeing the scene is a fact that can imply guilt, then it should also be instructed that remaining at the scene (or within the jurisdiction) is a fact that can suggest innocence. But the two assertions are not logically symmetrical. *See State v. Walton*, 769 P.2d 1017, 1030 (Ariz. 1989) ("Although flight is relevant to guilt, it does not necessarily follow that lack of flight is relevant to innocence."), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). The assertions are not symmetrical because criminal trials themselves are not symmetrical, nor are they supposed to be. A criminal defendant is presumed to be innocent and bears no burden of proving it; the burden falls entirely upon the state to prove guilt, and it must do so unilaterally "beyond a reasonable doubt," the highest standard of proof that exists anywhere in the law. *See* NRS 175.191; NRS 175.201. Consequently, a defendant has no need for any inference suggesting innocence when his innocence is presumed throughout

the trial. *See Commonwealth v. Hanford*, 937 A.2d 1094, 1097-98 (Pa. Super. Ct. 2007) (noting that inferences of innocence are unnecessary when defendants are "presumed innocent until proven guilty"). For this reason, except when flight is an element of the offense charged or when an absence of flight otherwise tends to seriously undermine the state's case against the defendant, "[t]he failure to flee, like voluntary surrender, is not a theory of defense from which, as a matter of law, an inference of innocence may be drawn by the jury." *State v. Jennings*, 562 A.2d 545, 549 (Conn. App. Ct. 1989) (internal quotation marks omitted).

In this appeal, Starr does not identify any defense recognized by law that his proposed instruction could support. Here, Starr's lack of flight does not, for example, establish an alibi, nor does it prove mistaken identity. Moreover, it does not negate any essential element of any crime for which he was charged, and he does not argue that it tends to disprove any particular fact or piece of evidence that the State was required to establish in order to prove Starr guilty of those crimes. Furthermore, while fleeing from the scene of a crime is "an active, conscious activity which readily and logically tends to support the inference of consciousness of guilt," the absence of flight is "more inherently ambiguous and," consequently, "its probative value on the issue of innocence is slight."[2]

---

[2]This is equally true whether considering a defendant's presence at the scene immediately after the crime, or merely within the jurisdiction long after the crime: "a person not in custody may . . . plausibly fear that his sudden departure from the jurisdiction will call police attention to him in the first place," and "a person still at large may refrain from fleeing because he is . . . convinced that he will never be identified as the culprit." *People v. Green*, 609 P.2d 468, 490 (Cal. 1980), *abrogated on other grounds by People v. Martinez*, 973 P.2d 512 (Cal. 1999).

*Williams*, 64 Cal. Rptr. 2d at 205-06 (internal quotations marks omitted). "[U]nlike an attempt to flee, the fact that a suspect did not try to avoid the police is open to multiple interpretations, many of which have little to do with consciousness of guilt, and which could actually reflect a strategic choice." *Hanford*, 937 A.3d at 1097; *see also State v. Sorensen*, 455 P.2d 981, 987 (Ariz. 1969). *See generally Albarran v. State*, 96 So. 3d 131, 192-93 (Ala. Crim. App. 2011) (rejecting inverse flight instruction); *Smith v. United States*, 837 A.2d 87, 99-100 (D.C. 2003) (same); *State v. Mayberry*, 411 N.W.2d 677, 684 (Iowa 1987) (same), *overruled on other grounds by State v. Heemstra*, 721 N.W.2d 549, 558 (Iowa 2006).

Accordingly, we conclude that Starr's lack of flight does not constitute a theory of defense for the offenses charged, and thus he was not entitled to an inverse flight instruction. Consequently, the district court did not abuse its discretion by declining to give Starr's proposed instruction.

Nonetheless, Starr attempts to distinguish his proposed instruction from those rejected by courts of other states by noting that, in those cases, the challenged instruction explicitly stated that lack of flight creates an inference of innocence. *See, e.g., Hanford*, 937 A.2d at 1097 (rejecting instruction that jury was "permitted to infer . . . innocence" because of lack of flight); *Jennings*, 562 A.2d at 548 n.2 (rejecting instruction stating that absence of flight "may be considered a basis for an inference of innocence"). In contrast, Starr's proposed instruction merely states that lack of flight is a "fact" that the jury may consider in deciding the question of guilt. It is certainly true that his proposed instruction does not contain the words "inference" or "innocence." Ultimately, however, this is a distinction without a difference, because the only logical way that the jury could plausibly utilize the "fact" of Starr's lack of flight in its deliberations

would be to treat it as a kind of generalized proof of his overall innocence, untied to any particular element of any crime or to any particular defense mounted by Starr. In other words, it ends up being precisely the same kind of inference of innocence with which other courts have dealt. *See Albarran*, 96 So. 3d at 192-93 (evaluating an instruction very similar to Starr's and concluding that it need not be given because its inference of innocence is unnecessary).

Finally, even assuming the district court abused its discretion by declining to give Starr's proposed inverse flight instruction, we conclude that any error was harmless. Even without his proposed instruction, Starr remained free to argue to the jury during closing argument that lack of flight proved his innocence. He fails to demonstrate how he was prejudiced by the lack of a jury instruction echoing an argument he otherwise had complete freedom to make. Thus, his "closing argument would not have been materially different or more effective with the benefit of the [requested] instruction, and . . . he has therefore failed to show prejudice." *Dawes v. State*, 110 Nev. 1141, 1147, 881 P.2d 670, 674 (1994). Accordingly, we conclude no relief is warranted.

## CONCLUSION

For these reasons, we conclude the district court did not abuse its discretion in refusing to give Starr's proposed "inverse flight" instruction and therefore affirm his judgment of conviction.

_____, J.
Tao

We concur:

_____, C.J.
Silver

_____, J.
Gibbons

Court of Appeals
OF
Nevada

(O) 1947B