# IN THE SUPREME COURT OF THE STATE OF NEVADA

GREGORY LEE HOVER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 63888

FILED

FEB 1 9 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction in a death penalty case. Eighth Judicial District Court, Clark County; Carolyn Ellsworth, Judge.

Appellant Gregory Hover and Richard Freeman kidnapped, sexually assaulted, robbed, and murdered Prisma Contreras outside of Las Vegas, Nevada. Ten days later, Hover broke into the home of Julio and Roberta Romero in Las Vegas, Nevada. He bound and shot Julio, forced Roberta to retrieve certain property, shot her, and left the home with jewelry and bank cards. Julio died as a result of his injuries; Roberta survived. Hover and Freeman also robbed the slot areas of three Las Vegas grocery stores. Lastly, while in pretrial detention, Hover attacked his cellmate with scissors.

A jury found Hover guilty of conspiracy to commit kidnapping; five counts of conspiracy to commit robbery; conspiracy to commit sexual assault; conspiracy to commit murder; five counts of burglary while in possession of a deadly weapon; three counts of first-degree kidnapping with the use of a deadly weapon; four counts of robbery with the use of a deadly weapon; two counts of robbery with the use of a deadly weapon, victim 60 years of age or older; sexual assault with the use of a deadly

SUPREME COURT
OF
NEVADA

(O) 1947A

16-05461

weapon; two counts of murder with the use of a deadly weapon; first-degree arson; two counts of burglary; attempted murder with the use of a deadly weapon; and battery by a prisoner with the use of a deadly weapon. The jury sentenced Hover to death for each murder conviction and the district court imposed numerous consecutive and concurrent sentences for the remaining convictions. In this appeal, Hover alleges numerous errors during the guilt and penalty phases of trial.

*Guilt phase issues*

*Juror challenges*

Hover raises several challenges to district court decisions during voir dire.

First, Hover contends that the district court erred in denying his challenges of prospective jurors whom he contends were predisposed toward a death sentence. We discern no abuse of discretion. *See Weber v. State*, 121 Nev. 554, 580, 119 P.3d 107, 125 (2005) (reviewing a district court's decision whether to excuse potential jurors for abuse of discretion). Despite the jurors' preference for harsher punishments, they acknowledged that Hover was innocent until proven guilty and that they would listen to all the evidence presented, follow the court's instructions, and fairly consider all possible penalties. *See id.* (providing that reviewing court must inquire "'whether a prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath.'" (quoting *Leonard v. State (Leonard II)*, 117 Nev. 53, 65, 17 P.3d 397, 405 (2001) (internal quotes omitted))). Moreover, the challenged prospective jurors were not ultimately empaneled and Hover does not allege that any juror actually empaneled was unfair or biased. *See Blake v. State*, 121 Nev. 779, 796, 121 P.3d 567,

578 (2005) ("If the jury actually seated is impartial, the fact that a defendant had to use a peremptory challenge to achieve that result does not mean that the defendant was denied his right to an impartial jury.").

Second, Hover contends that the district court erred in granting the State's challenge to a potential juror. We discern no abuse of discretion. *See Weber*, 121 Nev. at 580, 119 P.3d at 125. The record established that the juror's views would "'prevent or substantially impair the performance of [her] duties as a juror in accordance with [her] instructions and oath.'" *Id.* (quoting *Leonard II*, 117 Nev. at 65, 17 P.3d at 405). In particular, despite the beyond a reasonable doubt standard, the potential juror stated that she would require proof of a defendant's guilt beyond any doubt in order to impose the death penalty. *See Browning v. State*, 124 Nev. 517, 526, 188 P.3d 60, 67 (2008) ("The focus of a capital penalty hearing is not the defendant's guilt, but rather his character, record, and the circumstances of the offense.").

Third, Hover argues that the district court erred in denying his objection pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986) to the State's use of a peremptory challenge. We conclude that Hover failed to demonstrate a prima facie case of discrimination as required under *Batson*. *See Ford v. State*, 122 Nev. 398, 403, 132 P.3d 574, 577 (2006) (providing that "the opponent of the peremptory challenge must make out a prima facie case of discrimination"). Under the totality of the circumstances, the strike of one African-American juror while another African-American juror remained on the panel, did not establish an inference of discrimination in this case. *See Watson v. State*, 130 Nev., Adv. Op. 76, 335 P.3d 157, 166 (2014) (providing that to establish a prima facie case, "the opponent of the strike must show 'that the totality of the

SUPREME COURT
OF
NEVADA

(O) 1947A

3

relevant facts gives rise to an inference of discriminatory purpose'" (quoting *Batson*, 476 U.S. at 93-94)). Thus, the burden did not shift to the State to proffer a race-neutral reason for the strike. *Ford*, 122 Nev. at 403, 132 P.3d at 577 (providing that once a prima facie case of discrimination is established "the production burden then shifts to the proponent of the challenge to assert a neutral explanation for the challenge"). Nevertheless, the State proffered several race-neutral reasons for striking the juror that were not belied by the record. Therefore, the district court did not abuse its discretion in denying Hover's challenge.

*Positron emission tomography (PET) scan*

Hover argues that the district court abused its discretion in denying his motion to obtain a PET scan because funding was available and the district attorney did not object to the testing. *See State v. Second Jud. District Court*, 85 Nev. 241, 245, 453 P.2d 421, 423-24 (1969) (reviewing denial of motion seeking payment of defense expenses for an abuse of discretion). We disagree for two reasons. First, Hover did not request a PET scan below but instead requested a Magnetic Resonance Imaging (MRI) scan.[1] The district court cannot be faulted for failing to order a scan that was not requested. Second, Hover did not meet his burden of demonstrating that either scan was necessary. *See Gallego v. State*, 117 Nev. 348, 370, 23 P.3d 227, 242 (2001), *abrogated on other grounds by Nunnery v. State*, 127 Nev., Adv. Op. 69, 263 P.3d 235 (2011). Counsel conceded in the district court that the defense expert witness did

---

[1]An MRI scan generates detailed images of the organs and tissues of the body. A PET scan employs a radioactive tracer drug to reveal how the tissues and organs are functioning.

not request the scan or conclude that it was necessary to diagnose Hover but sought testing merely because Hover was "facing a death sentence."[2] *See Jaeger v. State*, 113 Nev. 1275, 1285, 948 P.2d 1185, 1191 (1997) (Shearing, C.J., concurring) ("[T]he guarantees of due process do not include a right to conduct a fishing expedition."). The district court cannot be faulted for denying a request that was not made nor supported by some basis for the request.

*Cross-examination of DNA analyst*

Hover also contends that the district court abused its discretion in preventing him from cross-examining the DNA analyst about errors in other cases.[3] The record indicates that the analyst had worked at the lab at the time when significant errors were revealed. Therefore, Hover claims that the district court abused its discretion in concluding that the events of which Hover complained were irrelevant without conducting an evidentiary hearing. *See Patterson v. State*, 129 Nev., Adv. Op. 17, 298 P.3d 433, 439 (2013) ("[A]n abuse of discretion occurs whenever a court fails to give due consideration to the issues at hand."); *see Collman v. State*, 116 Nev. 687, 702, 7 P.3d 426, 436 (2000) ("The decision to admit or exclude evidence rests within the trial court's discretion, and this court will not overturn that decision absent manifest

---

[2]In his reply brief, Hover asserts that the psychological expert indicated that a scan was necessary, however he does not cite to the record where such an assertion was made.

[3]Hover also contends that cross-examination about the lab's prior errors in DNA identification would expose bias on the part of the analyst or department. It is unclear how the lab's prior errors could influence the analyst in such a way as to lead to a "personal and sometimes unreasoned judgment." Merriam-Webster's Collegiate Dictionary 110 (10th ed. 1995).

error."). We agree that the district court should have allowed the consideration of this matter but conclude that the error was harmless. *See Valdez v. State*, 124 Nev. 1172, 1189, 196 P.3d 465, 476 (2008) ("If the error is of constitutional dimension, then . . . [this court] will reverse unless the State demonstrates, beyond a reasonable doubt, that the error did not contribute to the verdict."). There is no indication that the witness was involved in any of the prior cases where errors were shown to have occurred. Therefore, her conclusions would not have been significantly undermined by the prohibited cross-examination. Moreover, while her conclusions were arguably powerful, there was substantial evidence of Hover's guilt notwithstanding that evidence. Hover repeatedly implicated himself in the sexual assault and murder of Contreras in statements that were consistent with physical evidence. In addition, cell phone records placed Hover in the area where Contreras' body was found, surveillance video showed a car like Hover's following Contreras' Jeep, Freeman's fingerprint was found on a matchbook at the scene, and surveillance video showed Hover and Freeman purchasing bleach and disposing of clothing shortly after the murder.

*Cross-examination of Marcos Ramirez*

Hover contends that the district court improperly limited his cross-examination of Marcos Ramirez, who he was accused of attacking in pretrial detention, to preclude questioning about prior arrests and convictions for violent crimes. We discern no abuse of discretion. *See Collman*, 116 Nev. at 702, 7 P.3d at 436. The district court permitted Hover to ask whether Ramirez told Hover about his prior record during their detention and Ramirez acknowledged that he told Hover about his

three convictions for domestic violence.[4] That prior conduct therefore was relevant to establishing Hover's defense. *See Daniel v. State*, 119 Nev. 498, 515, 78 P.3d 890, 902 (2003) ("[E]vidence of specific acts showing that the victim was a violent person is admissible if a defendant seeks to establish self-defense *and was aware of those acts*."). On the other hand, whether Ramirez had been arrested for coercion and a probation violation alleging battery with a deadly weapon was not relevant because prior arrests did not demonstrate that he had committed prior acts of violence. *See Daniel*, 119 Nev. at 512-13, 78 P.3d at 900 ("An arrest shows only that the arresting officer thought the person apprehended had committed a crime . . . . An arrest does not show that a crime in fact has been committed, or even that there is probable cause for believing that a crime has been committed.").

*Witness' outburst*

Hover contends that the district court erred in denying his motion for mistrial based on Roberta Romero's outburst during her testimony. We disagree. Given the brevity of the outburst, in relation to both Roberta's testimony and the entirety of the guilt-phase testimony, the swift manner in which the district court addressed it, and the fact that statements were not translated for the jury, the outburst likely did not unduly influence the jury. *See Johnson v. State*, 122 Nev. 1344, 1358-59, 148 P.3d 767, 777 (2006) (providing that an isolated incident of the victim's brother passing out in response to a crime scene photograph did

---

[4]Ramirez testified that he had one felony conviction for third-offense domestic violence. *See* NRS 200.485 (providing that, under certain circumstances, first and second domestic violence offenses are punishable as misdemeanors and the third offense is punishable as a felony).

not render the penalty hearing fundamentally unfair). Therefore, the district court did not abuse its discretion in denying the motion for a mistrial. *See Rose v. State,* 123 Nev. 194, 206-07, 163 P.3d 408, 417 (2007).

*Bad act testimony*

Hover argues that the district court erred in permitting the State to elicit testimony about uncharged ATM robberies on the ground that he opened the door to that evidence. We discern no plain error. *See Nelson v. State,* 123 Nev. 534, 543, 170 P.3d 517, 524 (2007) (reviewing unobjected to error for plain error affecting substantial rights). The initial discussion about the ATM robberies occurred during defense questioning. Although it may have been unnecessary for the State to refer to the ATM robberies on redirect, the comment was brief and the State did not elicit further testimony about the robberies. Therefore, Hover failed to demonstrate that the State's comment prejudiced his substantial rights. *See id.* at 543, 170 P.3d at 524 (requiring that appellant demonstrate that error which is apparent from "a casual inspection of the record" was prejudicial).

*Impermissible impeachment*

Hover contends that the State impermissibly impeached its own witness by eliciting testimony that her prior conviction for child molestation involved consensual sexual contact with a 15-year-old when the witness was herself 19 years old. We agree. Although a party may "'remove the sting'" of impeachment by questioning its own witness about the existence of prior convictions, *United States v. Ohlers,* 169 F.3d 1200, 1202 (9th Cir. 1999) (quoting F.R.E. 609 advisory committee's note to 1990 amendment), a witness may not be impeached by questioning about the

SUPREME COURT
OF
NEVADA

(O) 1947A

8

sentence imposed or the facts underlying the conviction, *see Jacobs v. State*, 91 Nev. 155, 158, 532 P.2d 1034, 1036 (1975) (providing that sentence imposed on witness is not relevant to impeachment); *Plunkett v. State*, 84 Nev. 145, 147, 437 P.2d 92, 93 (1968) (providing the circumstances underlying prior convictions are not relevant to impeachment). Nevertheless, this error was harmless. *See Valdez*, 124 Nev. at 1189, 196 P.3d at 476 (explaining that errors that are not of a constitutional nature do not warrant reversal unless they "substantially affect[ed] the jury's verdict"). The witness' testimony, which chiefly described the January 28, 2010 robbery, was detailed and corroborated by other evidence.

*Improper identification*

Hover contends that the district court erred in permitting Detective Karl Lorson to testify that Freeman was not the perpetrator depicted in the three surveillance videos and that the perpetrator of the robberies was the same individual. We conclude that the district court did not abuse its discretion in permitting Detective Lorson to testify that Freeman was not in the surveillance videos. Detective Lorson had two opportunities to observe Freeman prior to viewing the surveillance footage. During those instances, he observed Freeman's physique and facial features. Thus, there is a reasonable basis for concluding that he could more likely correctly recognize Freeman or indicate that it was not Freeman in the video. *See Rossana v. State*, 113 Nev. 375, 380, 934 P.2d 1045, 1048 (1997) (providing a lay witness's opinion testimony "regarding the identity of a person depicted in a surveillance photograph" is admissible "if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the

jury." (internal quotation marks omitted)). However, the district court erred in permitting Detective Lorson to testify that, though the surveillance videos did not depict Freeman, the videos all depicted the same perpetrator. Detective Lorson's testimony did not establish that he had a reasonable basis to more likely correctly determine that the same perpetrator was shown in all three videos. However, the error did not affect Hover's substantial rights, *see Nelson*, 123 Nev. at 543, 170 P.3d at 524, as there was substantial evidence besides this testimony which indicated that Hover robbed the three grocery stores.

### Hover's admission to a correctional officer

Hover argues that the district court erred in admitting testimony about a statement he made to a corrections officer in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). We disagree. Hover was in custody when he admitted to slashing Ramirez.[5] *See Taylor v. State*, 114 Nev. 1071, 1082, 968 P.2d 315, 323 (1998). However, the corrections officer's query about whether Hover had sustained injuries was not an "interrogation" under *Miranda*, in that it was not reasonably likely to elicit an incriminating response from Hover. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Therefore, the district court did not err in denying the motion to suppress.

### Gruesome photographs

Hover contends that the district court erred in admitting unduly prejudicial autopsy photographs. He further contends that a

---

[5]Corrections Officer Roger Cole testified that he "asked [Hover] if he had any injuries and he state that, no. And then he told me that he had sliced the [Ramirez]'s back. [Ramirez] stood up, took the scissors from [Hover], and cut his hand."

photograph depicting a feminine pad near the victim, which was introduced during the penalty phase of trial, was inflammatory because it suggests that he sodomized Contreras. We conclude that this claim lacks merit. The district court enjoys broad discretion in matters related to the admission of evidence, *Byford v. State*, 116 Nev. 215, 231, 994 P.2d 700, 711 (2000), including the admission of "photographs . . . as long as their probative value is not substantially outweighed by their prejudicial effect," *Libby v. State*, 109 Nev. 905, 910, 859 P.2d 1050, 1054 (1993), *vacated on other grounds*, 516 U.S. 1037 (1996). Although the autopsy photographs are gruesome, they were relevant in that they assisted the medical examiner in testifying about Contreras' cause of death, the manner in which she received the injuries, and the condition of her body when it was discovered. As to the photograph that was introduced during the penalty phase of trial, Hover failed to show that the district court abused its discretion. The district court concluded that the photograph was admissible because it constituted physical evidence that corroborated the testimony that Contreras was sodomized which "would have been even more painful than sexual assault through intercourse vaginally." The pain inflicted on Contreras during Hover's crimes against her was relevant to establishing an aggravating circumstance alleged by the State. *See* NRS 200.033(8).

*Freeman's bad act evidence*

Hover argues that the district court erred in denying him the opportunity to introduce evidence that Freeman possessed child pornography and had committed prior crimes involving knives because the evidence could have shown that Freeman was more culpable in the sexual assault and murder. We discern no abuse of discretion, *see Ramet v. State,*

125 Nev. 195, 198, 209 P.3d 268, 269 (2009) (reviewing district court's decision to admit or exclude for an abuse of discretion), because evidence that Freeman possessed child pornography or had committed other crimes with knives was not admissible to prove or refute the allegation that Hover sexually assaulted Contreras, *see* NRS 48.045(2) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith.").

*Insufficient evidence of kidnapping for Julio Romero*

Hover argues that the State failed to produce sufficient evidence to support his conviction for kidnapping Julio Romero because there was no evidence that Julio had been moved for any purpose beyond the completion of the robbery and therefore the kidnapping was merely incidental to the robbery. We disagree. The evidence established that Hover moved Julio from the front door to another bedroom where he was taped to a chair and shot. Hover had taken Julio's wallet from the kitchen, but no evidence suggests that anything of value was taken from the bedroom in which Julio was found. Therefore, the movement was not necessary to complete the robbery. *See Mendoza v. State*, 122 Nev. 267, 275, 130 P.3d 176, 181 (2006) (explaining that to be a separate crime when arising from the same conduct as a robbery, a kidnapping must involve (1) "movement or restraint [that has] independent significance from the act of robbery itself," (2) "create a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery," or (3) "involve movement, seizure or restraint substantially in excess of that necessary to its completion"); *see also Wright v. State*, 94 Nev. 415, 418, 581 P.2d 442, 444 (1978) (setting aside a kidnapping conviction because "the movement of the victims appear[ed] to have been incidental to the robbery and

without an increase in danger to them"), *modified on other grounds by Mendoza*, 122 Nev. at 274, 130 P.3d at 181. Further, Hover's statements to his cellmate indicated that Julio was bound and murdered before Hover searched the home for valuables. Because the restraint had an "independent significance from the act of robbery," *Mendoza*, 122 Nev. at 276, 130 P.3d at 181, and the evidence satisfies the elements of kidnapping, *see* NRS 200.310(1), sufficient evidence supports Hover's conviction for kidnapping. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

*Brady/Giglio evidence*

Hover contends that the State failed to disclose evidence related to whether Ramirez received a benefit for his testimony in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). We disagree. Nothing in the record suggests that Ramirez's guilty plea agreement or sentence was premised on any benefit from the State in exchange for his testimony at Hover's trial. Therefore, the district court did not err in denying this claim. *See Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000) (employing de novo standard of review for *Brady* challenges raised in the district court).

*Prosecutorial misconduct*

Hover identifies two arguments by the prosecutor that he contends constitute prosecutorial misconduct. Prejudice from prosecutorial misconduct results when "a prosecutor's statements so infected the proceedings with unfairness as to make the results a denial of due process." *Thomas v. State (Thomas I)*, 120 Nev. 37, 47, 83 P.3d 818, 825 (2004). The challenged comments must be considered in context and "'a criminal conviction is not to be lightly overturned on the basis of a

prosecutor's comments standing alone.'" *Hernandez v. State*, 118 Nev. 513, 525, 50 P.3d 1100, 1108 (2002) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). Because Hover failed to object, his claims are reviewed for plain error affecting his substantial rights. *See* NRS 178.602; *Gallego*, 117 Nev. at 365, 23 P.3d at 239.

First, Hover contends that the State's argument that Hover committed the crimes as a result of racial animus was not supported by the evidence. *See Rice v. State*, 113 Nev. 1300, 1312, 949 P.2d 262, 270 (1997) (noting that a prosecutor has a duty to refrain from making statements that cannot be proved at trial), *abrogated on other grounds by Rosas v. State*, 122 Nev. 1258, 1265 n.10, 147 P.3d 1101, 1106 n.10 (2006). We disagree. Evidence introduced at trial showed that Hover told Ramirez that he "killed some Mexicans." Further, the evidence clearly demonstrates that Hover levied his most violent actions against Latino victims. Therefore, he failed to demonstrate that the district court plainly erred.

Second, Hover argues that the State impermissibly shifted the burden of proof when it argued that "[t]he only person who doesn't believe that—or doesn't state that Gregory Hover is guilty of Count 31 is [defense counsel] Christopher Oram." We disagree. When read in context, the challenged comment contends that, given the consistent accounts from Ramirez, the officers on the scene of the jail assault, and Hover's own admission, it was not unreasonable for the correctional officers to decide not to collect video of the incident. Thus, the observation that defense counsel was the only individual who believed it was necessary to obtain the video was a proper response to Hover's argument that there was insufficient evidence to convict because prison staff failed to collect video

evidence. *See Miller v. State*, 121 Nev. 92, 99, 110 P.3d 53, 58 (2005) (requiring that prosecutor's comments must be considered in context in which they were made). While the comment could also be taken as disparaging of the defense's argument, *see Butler v. State*, 120 Nev. 879, 898, 102 P.3d 71, 84 (2004) (providing that a prosecutor may not disparage legitimate defense tactics), it did not shift the burden of proof. Therefore, Hover failed to demonstrate that the district court plainly erred.

### *Juror misconduct*

Hover argues that the district court erred in denying his motion for a mistrial based on juror misconduct. He asserts that removing the offending juror was not sufficient to address the misconduct. We discern no abuse of discretion. *See Viray v. State*, 121 Nev. 159, 164, 111 P.3d 1079, 1083 (2005) (recognizing district court's discretion to address juror misconduct); *Meyer v. State*, 119 Nev. 554, 563-64, 80 P.3d 447, 455 (2003) (providing that a defendant must establish that juror misconduct occurred and was prejudicial in order to prevail on a motion for mistrial). Juror 8 engaged in misconduct by conducting research on the proceedings and contesting the district court's instruction on the law. *See Valdez*, 124 Nev. at 1186, 196 P.3d at 475 ("A jury's failure to follow a district court's instruction is intrinsic juror misconduct."); *see also Meyer*, 119 Nev. at 565, 80 P.3d at 456 ("[O]nly in extreme circumstances will intrinsic misconduct justify a new trial."). However, the jury did not permit juror 8 to share the results of his research and quickly informed the court of his actions. No other juror learned the results of that research. Therefore, Hover failed to demonstrate a "reasonable probability or likelihood that the juror misconduct affected the verdict." *Meyer*, 119 Nev. at 564, 80 P.3d at 455; *see also Zana v. State*, 125 Nev. 541, 548, 216 P.3d 244, 248 (2009) (noting

that court should consider (1) how long the jury discussed the extrinsic evidence, (2) when the discussion occurred relative to the verdict, (3) the specificity or ambiguity of the information, and (4) whether the issue involved was material).

### *Jury instructions*

Hover contends that the district court erred in giving several instructions during the guilt phase of trial. Specifically, he contends that the implied malice instruction does not use language a reasonable juror would understand, the premeditation instruction does not sufficiently differentiate the elements of first- and second-degree murder, the equal and exact justice instruction confused the jury, and the reasonable doubt instruction impermissibly minimized the burden of proof. We discern no abuse of discretion. *See Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) (noting district court's broad discretion to settle jury instructions). This court has upheld the language used in the implied malice instruction, *see Leonard v. State*, 117 Nev. 53, 78-79, 17 P.3d 367, 413 (2001) (the statutory language of implied malice is well established in Nevada and accurately informs the jury of the distinction between express and implied malice); *Cordova v. State*, 116 Nev. 664, 666, 6 P.3d 481, 483 (2000) (the substitution of the word "may" for "shall" in an implied malice instruction is preferable because it eliminates the mandatory presumption); the premeditation instruction, *see Byford v. State*, 116 Nev. 215, 236-37, 994 P.2d 700, 714-15 (2000); and the equal and exact justice instruction, *see Thomas v. State*, 120 Nev. 37, 46, 83 P.3d 818, 824 (2004); *Daniel v. State*, 119 Nev. 498, 522, 78 P.3d 890, 906 (2003); *Leonard v. State*, 114 Nev. 1196, 1209, 969 P.2d 288, 296 (1998). In addition, the district court gave Nevada's statutory reasonable doubt instruction as set

forth in and mandated by NRS 175.211, and we have repeatedly upheld the constitutionality of that instruction. *See, e.g., Chambers v. State,* 113 Nev. 974, 982-83, 944 P.2d 805, 810 (1997); *Evans v. State,* 112 Nev. 1172, 1191, 926 P.2d 265, 277 (1996); *Lord v. State,* 107 Nev. 28, 40, 806 P.2d 548, 556 (1991), *limited on other grounds by Summers v. State,* 122 Nev. 1326, 1331, 148 P.3d 778, 782 (2006).

*Penalty phase issues*

### *Freeman's bad act evidence*

Hover argues that the district court erred in denying him the opportunity to introduce evidence of Freeman's bad acts and upbringing to present a proportionality argument. We discern no abuse of discretion. *See Ramet,* 125 Nev. at 198, 209 P.3d at 269. As "[t]he focus of a capital penalty hearing is . . . [the defendant's] character, record, and the circumstances of the offense," evidence related to Freeman's upbringing and prior record were not relevant to determining Hover's sentence. *See Browning,* 124 Nev. at 526, 188 P.3d at 67; *see also* NRS 48.025(2) ("Evidence which is not relevant is not admissible."). Further, the district court was not required to allow evidence related to Freeman's background because proportionality of sentences between similarly situated defendants is not constitutionally mandated. *See Pulley v. Harris,* 465 U.S. 37, 44 (1984) (rejecting claim that appellate court must review proportionality of a defendant's sentence against similarly situated defendants).

### *Testimony of Freeman's attorney*

Hover contends that the district court erred in denying his request to introduce the testimony of Freeman's attorney to describe the terms of Freeman's guilty plea agreement. We disagree. Because

Freeman's guilty plea agreement was admitted into evidence during the penalty phase of trial, testimony about the contents of that agreement was not necessary. *See* NRS 48.035(2) ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, waste of time or needless presentation of cumulative evidence.").

### *Prosecutorial misconduct*

Hover contends that the State engaged in several instances of prosecutorial misconduct during the penalty phase of trial.

First, Hover argues that the State improperly asserted that he had been stalking Contreras because there was no evidence supporting this statement. We disagree. Witnesses to whom Hover described the rape and murder of Contreras realized from his description of the events that he had been infatuated with her. As there was some evidence introduced at trial which supported the State's argument, *see Rice*, 113 Nev. at 1312, 949 P.2d at 270 (noting prosecutor's duty to refrain from making statements that cannot be proved at trial), the district court did not abuse its discretion in overruling the objection to the comment.

Second, Hover contends that the State improperly implied that Hover intended to sexually assault Roberta but could not because he did not have time.[6] We disagree. The State's comment does not overtly suggest that Hover planned to sexually assault Roberta. Therefore, the district court did not plainly err in concluding that the statement was too

---

[6]During penalty phase opening arguments, the prosecutor stated that the evidence would show "why and how Roberta was shot and what was going to happen to her had that phone call from Mr. Freeman come into that home and caused the defendant to leave early."

 

"amorphous" to imply a plan on Hover's part that was not borne out by the evidence. *See Patterson*, 111 Nev. at 1530, 907 P.2d 987 (providing that plain error must be "so unmistakable that it reveals itself by a casual inspection of the record").

Third, Hover argues that the State improperly suggested that Hover's disposal of a firearm before committing the charged crimes indicated that he had committed other uncharged crimes. We disagree. The State's argument is supported by evidence introduced at the penalty hearing. In particular, witnesses testified that Hover had approached an individual on whom he was supposed to serve process while brandishing a firearm and Hover, Freeman, and Pamela Lindus had robbed an elderly man at an ATM. Therefore, Hover failed to demonstrate that the district court abused its discretion in overruling the objection.

*Jury instructions*

Hover argues that: (1) the instruction concerning weighing aggravating and mitigating circumstances did not conform to the beyond-a-reasonable-doubt standard of *Johnson v. State*, 118 Nev. 787, 802, 59 P.3d 450, 460 (2002); the "moral culpability" language in the instruction defining mitigating circumstances was not broad enough to define mitigating circumstances; and the instructions failed to define "felony involving the use or threat of violence to the person of another." Hover did not object to the instructions below and we conclude that the district court did not plainly err in instructing the jury. *See Valdez*, 129 Nev. at 1190, 196 P.3d at 477 (reviewing unobjected-to error for plain error affecting substantial rights). As to the weighing of aggravating and mitigating circumstances, the instruction here comports with our decision in *Nunnery v. State*, 127 Nev., Adv. Op. 69, 263 P.3d 235, 253 (2011), that the

weighing of aggravating and mitigating circumstances is not a factual determination and thus it is not subject to the proof beyond a reasonable doubt standard. As for the "moral culpability" language in the mitigation instruction, considering the instruction as a whole we are not convinced that the jury was reasonably likely to understand the instruction to limit its ability to consider "any aspect of [the defendant's] character or record as a mitigating circumstance regardless of whether it reflected on his moral culpability," *Watson*, 130 Nev., Adv. Op. No. 76, 335 P.3d at 173, particularly where one or more of the jurors found many mitigating circumstances that related to Hover's background and character and were unrelated to the crime. And lastly, the phrase "felony involving the use or threat of violence" does not use words with "technical legal meaning" and is commonly understood; it therefore needed no further definition. *See Dawes v. State*, 110 Nev. 1141, 1146, 881 P.2d 670, 673 (1994).

*Constitutionality of the death penalty*

Hover argues that the death penalty violates the Eighth Amendment of the United States Constitution's prohibition against cruel and unusual punishment because it does not sufficiently narrow the class of persons eligible for the death penalty. He further contends that the death penalty is cruel and therefore violates the Nevada Constitution's prohibition against cruel or unusual punishments. Similar arguments have been previously rejected by this court. *See, e.g., Thomas v. State (Thomas II)*, 122 Nev. 1361, 1373, 148 P.3d 727, 735-36 (2006) (reaffirming that Nevada's death penalty statutes sufficiently narrow the class of persons eligible for the death penalty); *Colwell v. State*, 112 Nev. 807, 814-15, 919 P.2d 403, 408 (1996) (rejecting claims that Nevada's

death penalty scheme violates the United States or Nevada Constitutions). Therefore, no relief is warranted on this claim.

*Cumulative error*

Hover contends that the cumulative effect of errors warrants reversal of his convictions and sentences. "The cumulative effect of the errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." *Hernandez*, 118 Nev. at 535, 50 P.3d at 1115. However, a defendant is not entitled to a perfect trial, merely a fair one. *Ennis v. State*, 91 Nev. 530, 533, 539 P.2d 114, 115 (1975). Based on the foregoing discussion of Hover's claims, we conclude that any error in this case, when considered either individually or cumulatively, does not warrant relief.

*Mandatory review*

NRS 177.055(2) requires that this court review every death sentence and consider whether (1) sufficient evidence supports the aggravating circumstances found, (2) the verdict was rendered under the influence of passion, prejudice or any arbitrary factor, and (3) the death sentence is excessive. First, sufficient evidence supported the aggravating circumstances found regarding each murder—Hover had been convicted of more than one count of murder; Hover had been convicted of numerous crimes involving the use or threat of violence; Contreras' murder occurred in the flight after Hover committed burglary while in possession of a firearm, first-degree kidnapping with the use of a deadly weapon, and robbery with the use of a deadly weapon; Hover subjected Contreras to nonconsensual sexual penetration before he murdered her; Hover mutilated Contreras' body after killing her; Julio's murder occurred during or in the flight after Hover committed burglary while in possession of a

firearm, robbery with the use of a deadly weapon, and first-degree kidnapping with the use of a deadly weapon; and Julio was murdered to prevent Hover's arrest. Second, nothing in the record indicates that the jury reached its verdict under the influence of passion, prejudice, or any arbitrary factor. And third, considering the plethora of violent crimes Hover committed during his two-week spree, which included kidnapping, rape, armed robbery, burglary, two murders, and attempted murder and the evidence in mitigation, we conclude that his sentence was not excessive.

Having considered Hover's contentions and concluded that they lack merit, we

ORDER the judgment of conviction AFFIRMED.

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

CHERRY, J., dissenting:

In my view, the district court abused its discretion in denying Hover's motion for transportation to undergo medical imaging. And I agree with the majority that the district court erred in limiting the cross-examination of the DNA analyst, permitting Detective Karl Lorson to testify that the surveillance videos depicted the same perpetrator, and

SUPREME COURT
OF
NEVADA

(O) 1947A

allowing the State to impermissibly "remove the sting" of its own witness' prior conviction, but in contrast, I believe those errors affected Hover's substantial rights. I therefore dissent.

*Medical imaging*

The district court must order payments of reasonable amounts for expert services incidental to an indigent defendant's defense when those services are "proper and necessary." *State v. Second Jud. District Court*, 85 Nev. 241, 245, 453 P.2d 421, 423-24 (1969). For instance,

> when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense.

*Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). Attendant to this obligation is to provide for medical testing, including imaging, that is necessary to assist the psychiatrist in preparing a defense. Accordingly, I disagree with the majority's conclusion that the district court did not abuse its discretion in denying the motion for medical imaging to assist in preparing Hover's defense. Hover's motion indicated that funding was available. As the district court did not have a significant interest in assuring that funding for indigent defendants' court-appointed expenses were protected, the defense's failure to file a more robust pleading detailing why the expenses were necessary and proper should not have proved fatal. Further, I am not convinced that appellate counsel's argument that the district court failed to order a PET scan (when an MRI scan was requested below) should significantly undermine Hover's assertion of error on appeal. Both scans are routinely used to diagnose neurological conditions. *See* Mayo

Clinic Staff, Tests and Procedures, MRI, Definition (August 17, 2013), available at *http://www.mayoclinic.org/tests-procedures/mri/basics/ definition/prc-20012903*; Mayo Clinic Staff, Tests and Procedures, Positron emission tomography (PET) scan, Definition (May 6, 2014) available at *http://www.mayoclinic.org/tests-procedures/petscan/basics/ definition/prc-20014301*. Counsel's failure to recognize a meaningful distinction between the procedures that are outside counsel's area of expertise should not preclude this court from meaningfully reviewing the district court's order.

Moreover, I cannot say that the error in denying this motion was harmless. The record does not indicate that Hover had a significant criminal history prior to the instant offenses. Although he had abused drugs several years before the instant offenses, the record reveals no prior crimes of violence. Shortly before the instant spree, Hover's wife reported that he began behaving bizarrely and she urged him to seek professional help. He then engaged in repeated and seemingly out-of-character episodes of brutal and callous violence. In light of this evidence, I cannot say that the failure to permit this testing did not have a "substantial and injurious effect or influence in determining the jury's verdict" or sentence. *Knipes v. State*, 124 Nev. 927, 935, 192 P.3d 1178, 1183 (2008) (quotation marks and citations omitted). As this psychological evidence could undermine evidence related to Hover's ability to premeditate and deliberate as well as mitigate his conduct, I would reverse his convictions for first-degree murder (Counts 9 and 21), attempted murder (Count 25), and his death sentences.

*DNA analyst*

SUPREME COURT
OF
NEVADA

(O) 1947A

24

I agree with the majority that the district court abused its discretion in prohibiting the proposed cross-examination of the State's DNA analyst. However, I disagree with the majority's conclusion that the error did not contribute to the verdict beyond a reasonable doubt. *See Valdez v. State*, 124 Nev. 1172, 1189, 196 P.3d 465, 476 (2008) ("If the error is of constitutional dimension, then . . . [this court] will reverse unless [it is shown], beyond a reasonable doubt, that the error did not contribute to the verdict."). The expert's testimony that both Hover and Contreras' DNA was present on a condom found at the crime scene was the most decisive evidence of Hover's involvement in Contreras' rape and murder. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 62 (2009) ("Modern DNA testing can provide powerful new evidence unlike anything known before."); *see also* Kimberly Cogdell Boies, *Misuse of DNA Evidence is not Always a "Harmless Error": DNA Evidence, Prosecutorial Misconduct, and Wrongful Conviction*, 17 Tex. Wesleyan L. Rev. 403, 406-07 (2011) (providing that "juries are more likely to convict when the prosecution presents DNA evidence," despite the fact that "DNA has the same likelihood for human error as do other types of evidence" (citations omitted)). Although there was other evidence presented that supported the verdicts, it was not nearly as powerful as the unchallenged DNA evidence. For example, the cell tower location evidence could not pinpoint Hover's location at the time of the murder, nor could it even indicate that the tower Hover's call routed through was the closest to him. *See* Alexandra Wells, *Ping! The Admissibility of Cellular Records to Track Criminal Defendants*, 33 St. Louis U. Pub. L. Rev. 487, 494 (2014) (noting that "cell signals go to the tower with the strongest signal, which is not always the cell tower geographically closest to the cell phone"). And

Hover's jailhouse confession must be viewed with suspicion, not solely because it is testimony of a jailhouse informant, *see* Russell D. Covey, *Abolishing Jailhouse Snitch Testimony*, 49 Wake Forest L. Rev. 1375, 1376-77 (2014) ("[N]o evidence is more intrinsically untrustworthy than the allegations of a jailhouse snitch."), but also because the informant was the victim of one of Hover's alleged crimes. The remaining evidence, which consisted of surveillance video showing similar cars, physical evidence that implicated Richard Freeman, a cryptic comment by Hover about a dream, and surveillance video showing Freeman and Hover making purchases at Wal-Mart, was not so powerful that the unchallenged DNA evidence did not contribute to the verdicts on Contreras' sexual assault and death. Accordingly, I would reverse Hover's convictions for conspiracy to commit kidnapping, robbery, sexual assault, and murder (Counts 1 through 4); burglary while in possession of a deadly weapon (Count 5); first-degree kidnapping with the use of a deadly weapon (Count 6); robbery with the use of a deadly weapon (Count 7); sexual assault with the use of a deadly weapon (Count 8); murder with the use of a deadly weapon (Count 9); and first-degree arson (Count 10).

*Identification from surveillance videos and improper impeachment*

I agree with the majority that the district court erred in permitting Detective Lorson to testify, based on his observation of the surveillance videos, that the perpetrator of the robberies was the same individual and that the State improperly "removed the sting" of impeachment from Pamela Lindus' testimony by introducing the facts underlying her conviction for child molestation. But in my opinion, the prohibited identification affected Hover's substantial rights, *see Nelson v. State*, 123 Nev. 534, 543, 170 P.3d 517, 524 (2007) (reviewing un-objected

to error for plain error affecting substantial rights), and the improper impeachment was not harmless, *see Valdez*, 124 Nev. at 1189, 196 P.3d at 476. Detective Lorson and Lindus provided the only testimony that implicated Hover in the robbery of Tohme. Tohme could not identify Hover as the perpetrator. Further, Hover's ex-wife, who had years to observe him and had identified him as the perpetrator in the other surveillance videos, could not identify him as the perpetrator of the robbery and burglary. Therefore, it was likely that Detective Lorson's testimony strongly influenced the jury's verdict on the charges related to the Tohme incident. *See U.S. v. Gutierrez*, 995 F.2d 169, 172 (9th Cir. 1993) (observing that expert testimony of a police officer may "carr[y] an aura of special reliability and trustworthiness" (quotations omitted)). The only remaining admissible evidence linking Hover to the Tohme robbery was Lindus' testimony. In informing the jury that Lindus had engaged in a prohibited sexual relationship between two teenagers, the State clearly cast Lindus and her testimony in a less objectionable light than it would have been had jury been left with the mere fact that Lindus had been convicted of child molestation. Therefore, I cannot conclude that inclusion of unfairly bolstered testimony by Lindus and inadmissible identification by Detective Lorson did not have an substantial effect on the jury's verdicts of conspiracy to commit robbery (Count 28); burglary while in possession of a firearm (Count 29); and robbery with the use of a deadly weapon, victim 60 years of age or older (Count 30).

Consequently, I would reverse Hover's convictions relative to the Contreras' kidnapping, sexual assault, and murder (Counts 1-10);

SUPREME COURT
OF
NEVADA

(O) 1947A

27

Julio's murder (Count 21); Roberta's attempted murder (Count 25); the Tohme robbery (Counts 28-30); and his death sentences.[7]

_____, J.
Cherry

cc:   Hon. Carolyn Ellsworth, District Judge
      Christopher R. Oram
      Oronoz & Ericsson
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk

---

[7] I also conclude that there was a reasonable likelihood that the jury misunderstood the moral culpability language in the mitigating circumstances instruction. *See Watson v. State*, 130 Nev., Adv. Op. 76, 335 P.3d 157, 176 (2014) (Cherry and Saitta, JJ., dissenting in part). However, as I would reverse Hover's murder convictions, it is unnecessary to address errors that occurred during the penalty hearing.

SUPREME COURT
OF
NEVADA

(O) 1947A